## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **IN RE: TransUnion Rental Screening** | \| | **No. 1:20-md-02933-JPB** |
| **Solutions, Inc. FCRA Litigation** | \| | *Francis* **ONLY** |
| _____ | \| | |

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KARL ANTHONY FRANCIS,

                              Civil No.: 1:19-cv-1185

             Plaintiff,

                              **JURY TRIAL DEMANDED**

vs.

TRANSUNION               RENTAL
SCREENING SOLUTIONS, LLC,

             Defendant.

### AMENDED COMPLAINT

Plaintiff Karl Anthony Francis ("Plaintiff"), by and through his attorneys, brings the following Complaint on behalf of himself and states as follows:

### INTRODUCTION

1.      By filing this Complaint on the consolidated MDL docket, Plaintiff is not waiving his right to remand for trial in the jurisdiction in which he originally filed his case. Rather, Plaintiff is filing this Complaint in order to ease the administrative burden on the Court and make clear his claim is proceeding as an individual action and not as a class action as originally pled.

1

2.      This is an action for damages, costs and attorneys' fees brought against TransUnion Rental Screening Solutions, LLC ("Defendant" or "TURSS") pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

3.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

4.       Defendant falsely reported to Plaintiff's potential landlord that Plaintiff is a serial criminal. Plaintiff is not a serial criminal.

5.      Defendant's inaccurate reporting cost Plaintiff his ability to rent the property of his choice, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

6.      Defendant's inaccurate report could have been easily remedied had Defendant consulted the current public record prior to issuing Plaintiff's report to his prospective landlord.

7.      Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of the information it reports regarding

consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being inaccurate.

8.      As a result of Defendant's conduct, Plaintiff brings a claim for failure to use reasonable procedures to ensure maximum possible accuracy based on § 1681e(b) of the FCRA.

## THE PARTIES

9.      Plaintiff Karl Anthony Francis is a natural person who resides in Arlington, Virginia, and who is a "consumer" protected by the FCRA.

10.      Defendant TransUnion Rental Screening Solutions, LLC ("TURSS") is a Delaware corporation doing business throughout the United States, including in the State of Virginia. TURSS is a wholly-owned subsidiary of TransUnion, LLC, which is wholly owned by TransUnion Intermediate Holdings, Inc.

11.      Among other things, Defendant sells consumer reports, often called background checks and credit reports, to landlords for their use in deciding whether to rent to a prospective tenant. These reports are sold to landlords in connection with a business transaction initiated by the consumer.

12.      Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating consumer credit

information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

13.     Plaintiff Francis's original complaint was filed in the Eastern District of Virginia.   That Court has personal jurisdiction over his claims because at all times relevant to this matter, Plaintiff resided in Arlington, Virginia.

14.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

16.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting. It regulates all consumer reports such as the tenant screening report prepared in Plaintiff's name.

17.     In the parlance of the FCRA, background checks, including

tenant screening reports, are "consumer reports," and providers of background checks like TURSS are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d), (f).

18.     The FCRA provides a number of protections for housing applicants who are subject to background checks.

19.     The FCRA imposes duties on consumer reporting agencies to ensure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

20.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

## **FACTS**

### **Defendant's Inaccurate Tenant Screening Report**

21.     In early February 2019, Plaintiff and his wife, Elisabeth Farny ("Ms. Farny"), sought to rent an apartment in Alexandria, Virginia.

22.     In looking for a rental property, Plaintiff and Ms. Farny found only one that met their needs, an apartment unit at the Reserve at Potomac Yard Apartments ("Potomac Yard") in Alexandria, Virginia.

23.     Plaintiff and Ms. Farny had a preference for renting at Potomac Yard because it was in a convenient location. In early February 2019, Ms. Farny had accepted a promising new job offer in Alexandria and had to relocate from Washington, D.C., while Plaintiff had accepted a promising job offer in Maryland and had to relocate from Pennsylvania. Potomac Yard was centrally located and was only a five minute walk from Ms. Farny's new place of employment and a 20 minute drive from Plaintiff's new place of employment. And it was an affordable and attractive option given the quality of units and numerous amenities.

24.     Potomac Yard was managed by Equity Residential Management, L.L.C. ("Equity Management").

25.     During the week of February 11, 2019, Plaintiff and Ms. Farny contacted Potomac Yard by telephone and spoke with Equity Management's Leasing Manager, Laura Falletta ("Ms. Falletta"), expressing their interest to rent an apartment unit for approximately $1,600.00 per month.

26.     Sometime during the week of February 11, 2019, Plaintiff and Ms. Farny met with Ms. Falletta at Potomac Yard and were given a tour of the complex and available apartment units. After completing the tour, Ms. Falletta instructed Plaintiff and Ms. Farny to complete a joint rental application online and submit payment, which would cover multiples fees.

6

27.     Later that same day, Plaintiff and Ms. Farny completed the joint rental application on a computer in Potomac Yard's lobby and submitted it, along with their debit card information for payment of multiple fees, including an apartment unit holding fee, two months' rent, and a security deposit, totaling approximately $3,500.00.

28.     Shortly thereafter, Ms. Falletta presented Plaintiff and Ms. Farny with a copy of the lease, which they both signed, and informed them that they could move into their apartment unit on February 16, 2019.

29.     Immediately thereafter, in preparation for their fast-approaching move-in date, Plaintiff and Ms. Farny ordered furniture for their apartment, including, but not limited to, a bed frame, mattress, dining room table, and chairs. They also set up payment for water, electricity, internet, and cable television service.

30.     Potomac Yard contracted with TURSS to provide tenant screening reports, which are consumer reports also known as background checks, on prospective tenants used to determine whether a prospective tenant was eligible to rent an apartment unit.

31.     On or about February 14, 2019, Potomac Yard obtained a consumer report regarding Plaintiff from TURSS, which it calls a "Resident Screening Report" ("the Report"), which included a compilation of Plaintiff's

credit report, a criminal record report, and eviction report.

32.     The Report is a consumer report regulated by the FCRA.

33.      The "Criminal Report" section of the Report included false information about three separate criminal cases, including multiple charges, *none* of which pertain to Plaintiff Karl Francis.

34.      The report included the following information about the first criminal case that was misattributed to Plaintiff:

Dataset: NJ Superior Court
DOB: N/A
Age: N/A
SSN: N/A
Residence: N/A
Aliases: no aliases found
Sex: U
Person Physical Features: No Physical Features listed
Activity Type: CRIMINAL/TRAFFIC
Court Record Id: 15005435
Jurisdiction Description: ESSEX

        Charge Sequence Id: 1
                ChargeDescription:TERRORISTIC    THREATS-THREATEN
                IMMINENT DEATH-PURP FEAR
                Charge Disposition Date: 2016-08-23
                Plea Negotiated Indicator: false
                Plea Description: DISMISS PLEA BARG
                Plea Guilty Indicator: false
                Plea No Contest Indicator: false


        Charge Sequence Id: 2
                ChargeDescription:POSS  OF  WAEPON  FOR  UNLAWFUL
                PURPOSE-OTHER WEAPON
                Charge Disposition Date: 2016-08-23

Plea Negotiated Indicator: false
Plea Description: GUILTY PLEA AS CHARG
Please Guilty Indicator: true
Please No Contest Indicator: false

Charge Sequence Id: 3

Charge Description: UNLAWFUL POSS WEAP - OTHER WEAPONS
Charge Disposition Date: 2016-08-23
Plea Negotiated Indicator: false
Plea Description: DISMISS PLEA BARG
Plea Guilty Indicator: false
Plea No Contest Indicator: false Appealed From Lower Court: false

35.     The report included the following information about the second

criminal case that was misattributed to Plaintiff:

Dataset: NJ Superior Court
Dataset: NJ Superior Court
DOB: N/A
Age: N/A
SSN: N/A
Residence: N/A
Aliases: no aliases found
Sex: U
Person Physical Features: No Physical Features listed
Activity Type: CRIMINAL/TRAFFIC
Court Record Id: 15001885
Jurisdiction Description: ESSEX

Charge Sequence Id: 1

Charge Description: CREDIT CARD CRIMES-POSSESS MATERIAL ETC USE IN SCANNER
Charge Disposition Date: 2016-08-23
Plea Negotiated Indicator: false
Plea Description: DISMISS PLEA BARG
Plea Guilty Indicator: false
Plea No Contest Indicator: false

9

Charge Sequence Id: 2

      Charge Description: OBTAIN/POSSESS A SYNTHETIC CANNABINOID

      Charge Disposition Date: 2016-08-23

      Plea Negotiated Indicator: false

      Plea Description: GUILTY PLEA AS CHARG

      Plea Guilty Indicator: true

      Plea No Contest Indicator: false

Charge Sequence Id: 3

      Charge Description: RECEIVING STOLEN PROP-KNOW PROP STOLEN-VAL 500-74999 ETC

      Charge Disposition Date: 2016-08-23

      Plea Negotiated Indicator: false

      Plea Description: DISMISS PLEA BARG

      Plea Guilty Indicator: false

      Plea No Contest Indicator: false

Appealed from Lower Court: false

36.    The report included the following information about a third criminal case that was misattributed to Plaintiff:

Dataset: NJ Superior Court
Dataset: NJ Superior Court

    DOB: N/A

    Age: N/A

    SSN: N/A

    Residence: N/A

    Aliases: no aliases found

    Sex: U

    Person Physical Features: No Physical Features listed

    Activity Type: CRIMINAL/TRAFFIC

    Court Record Id: 14004387

    Jurisdiction Description: ESSEX

    Charge Sequence Id: 1

      ChargeDescription:TERRORISTICTHREATS-

THREATEN IMMENT DEATH-PURP FEAR
Charge Disposition Date: 2016-11-01

Appealed from lower court: false

37.     TURSS's reporting was false. The aforementioned criminal charges and guilty dispositions from Essex County should not have been included in Plaintiff's Report.

38.     Plaintiff has never been charged with or convicted of any of the aforementioned criminal offenses.

39.     Any member of the public who took a five minute cursory review of Plaintiff's public record could confirm the flaw in the TURSS report about Plaintiff because contrary to Defendant's representation in its reports that the original public records did not contain a date of birth, in fact, all of the original public records do contain a date of birth. Specifically, the original public records contain a date of birth which has a different month, day and year from Plaintiff's date of birth. The year of birth on the original public records is 1990. Plaintiff was born 28 years earlier, in 1962.

40.     It is indisputable that prior to supplying the report about Plaintiff to Potomac Yard, TURSS failed to consult current public records in Essex County, New Jersey, which indicate that the aforementioned criminal charges and guilty dispositions belong to Plaintiff's *son*, named Karl Anthony Francis ("Convicted Misdemeanant Karl Francis"). Had TURSS actually consulted or

obtained the underlying court records, it would have seen an obvious discrepancy between Convicted Misdemeanant Karl Francis and Plaintiff.

41.     On February 15, 2019, Ms. Farny received a telephone call from Ms. Falletta informing her that Potomac Yard received Plaintiff's background check and that there was an issue with his criminal history. Ms. Farny immediately asked what the issue was and Ms. Falletta informed her that Plaintiff's background check indicated that he had a significant criminal record. Ms. Farny told Ms. Falletta that Plaintiff did not have a significant criminal record and that there must have been a mistake. Ms. Falletta stated that she would investigate the background check issue further and get back to Ms. Farny the following day with more information. However, Ms. Falletta informed Ms. Farny that she and Plaintiff would no longer be allowed to move into their unit at Potomac Yard on February 16, 2019, as previously agreed.

42.     Upon speaking with Ms. Farny about her call with Ms. Falletta, Plaintiff was humiliated that his potential landlord now thought he was a serial criminal, especially considering that he had truthfully stated in the joint rental application that he was not.

43.     Later that same day, Ms. Farny received email correspondence from Ms. Falletta, on behalf of Equity Residential, stating that she and Plaintiff's joint rental application had been denied.

44.     On February 16, 2019, Ms. Farny received a follow-up telephone call from Ms. Falletta. Plaintiff got on the phone, stated that they were being denied an apartment based upon false criminal record information belonging to his son who was born 28 years after him, and demanded contact information for the company who prepared his background check. Ms. Falletta stated that she was bound by the information contained within TURSS's report and that he needed to contact TURSS if he wanted to discuss the information in his report. She then provided Plaintiff with TURSS's telephone number.

45.     On February 18, 2019, having still not seen a copy of the Report, Plaintiff placed a telephone call to TURSS and spoke with a male representative. After providing his identification information, Plaintiff informed the representative that he had recently applied for housing at Potomac Yard and it had been brought to his attention that TURSS completed a background check in his name that contained inaccurate criminal record information. Plaintiff informed the representative that he was calling to dispute the inaccurate criminal record information contained within his background check and requested that TURSS reinvestigate and provide him with an updated copy of his report.

46.     On February 20, 2019, with the assistance of counsel, Plaintiff sent a 15 U.S.C. § 1681g file request to TURSS.

47.     On February 21, 2019, Plaintiff received email correspondence

from TURSS, which read:

> We received you request for investigation regarding your
> potential criminal history on 02/16/2019. After further
> investigation, our findings show the records in our database
> under 15005435, 15001885 and 14004387 have been confirmed
> as inaccurate or incomplete public record information based on
> the following additional record details obtained from the New
> Jersey, Essex County Superior Court – Criminal website.
>
> On 02/19/2019 we confirmed the records 15005435, 15001885
> and 14004387 **do not match your personal identifying
> information.**
>
> Based on the additional record details obtained from the New
> Jersey, Essex County Superior Court – Criminal website our
> office has suppressed this data from your consumer file as a
> preventative measure and the data will not show on a future
> criminal background screening from TransUnion Rental
> Screening Solutions. A copy of the updated report has been
> enclosed.

(emphasis added).

48.     On February 28, 2019, TURSS responded to Plaintiff's 15

U.S.C. § 1681g file request and enclosed two documents: 1) the

aforementioned copy of Plaintiff's Report, created on February 14, 2019,

which falsely reported Plaintiff as a convicted criminal, and 2) an Application

Summary, created on February 28, 2019, which indicated that no criminal

records were found in his name.

49.     After Potomac Yard denied Plaintiff's joint rental application,

he suffered the following economic damages: 1) his $200 security deposit was never refunded; 2) his water and electricity, internet, and cable television fees for the month of February 2019 were never refunded; and 3) he had to pay a fee to return all of the apartment furniture he ordered from Amazon.

50.     As a result of the erroneous information contained within TURSS's Report, Plaintiff and Ms. Farny had to continue living in her apartment in Washington, D.C., forcing her to spend a significant amount of additional time each morning commuting to her new job in Alexandria, Virginia via public transit. Plaintiff and Ms. Farny also spent another month searching for places to rent before they found an apartment in Arlington, Virginia in March 2019.

51.     But for TURSS's false Report, Plaintiff's joint rental application would have been accepted by Potomac Yard and he and Ms. Farny would have been allowed to move into the unit they desired to rent on February 16, 2019, as originally scheduled.

52.     TURSS has been sued many times for its failure to use reasonable procedures to assure that the rental-purposed consumer reports it sells are maximally accurate. TURSS knows that its process for obtaining and accurately reporting, updating, and investigating criminal public records is so shoddy that it leads to material inaccuracies. TURSS's parent company,

TransUnion, has been admonished by at least one federal court that it doesn't comply with the FCRA.

53.     Among many other cases, for instance, a jury recently returned a verdict in favor of plaintiffs against TransUnion for its failure to use reasonable procedures to assure maximum possible accuracy in erroneously reporting that the plaintiffs in that case were terrorists, money launderers, and narcotics traffickers on the Office of Foreign Asset Control's "blocked persons" list. *Ramirez v. TransUnion, LLC*, No. 3:13CV632 (N.D. Cal.).

54.     The injuries suffered by Plaintiff as a direct result of TURSS's erroneous reporting are the type of injuries that the FCRA was enacted to address.  At common law, TURSS's conduct would have given rise to causes of action based on defamation and invasion of privacy.

55.     As a direct result of TURSS's conduct, Plaintiff has suffered these injuries resulting in damages, including the inability to rent the unit he desired, the expenditure of time and money looking for another unit and trying to correct TURSS's erroneous Report; damage to his reputation; physical injury as a result of emotional distress; damage to his relationship with his wife; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment; and other losses that are continuing in nature.

16

## CLAIM FOR RELIEF

### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

56.     Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

57.     Defendant violated 15 U.S.C. § 1681e(b) by preparing a consumer report relating to Plaintiff without following reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

58.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

59.     In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

60.     Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

61.     WHEREFORE, Plaintiff prays for relief as follows:

a.   Determining that Defendant negligently and/or willfully violated the FCRA;

17

b.  Awarding actual damages, statutory damages, and punitive

damages as provided by the FCRA;

c.  Awarding reasonable attorneys' fees and costs as provided by

the FCRA; and

d.  Granting further relief, in law or equity, as this Court may

deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

62.     Plaintiff demands a trial by jury.

Date: June 21, 2021                                  BERGER MONTAGUE PC

By: /s/ E. Michelle Drake
E. Michelle Drake, SBN 229202
emdrake@bm.net
Joseph C. Hashmall
jhashmall@bm.net
1229 Tyler Street NE, Suite 205
Minneapolis, Minnesota 55413
T: (612) 594-5999
F: (612) 584-4470

Robert C. Khayat, Jr. (416981)
rkhayat@khayatlawfirm.com
KHAYAT LAW FIRM
75 Fourteenth Street, N.E.
Suite 2750
Atlanta, Georgia 30309
T: (404) 978-2750
F: (404) 978-2901

Leonard A. Bennett
lenbennett@clalegal.com
Craig C. Marchiando

craig@clalegal.com
CONSUMER LITIGATION
ASSOCIATES, P.C
763 J. Clyde Morris Boulevard,
Suite 1-A
Newport News, Virginia 23601
T: (757) 930-3660
F: (757) 930-3662

Kristi C. Kelly
kkelly@kellyguzzo.com
Andrew J. Guzzo
aguzzo@kellyguzzo.com
Casey S. Nash
casey@kellyguzzo.com
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite
202
Fairfax, Virginia 22030
T: (703) 424-7572
F: (703) 591-0167

James A. Francis
jfrancis@consumerlawfirm.com
John Soumilas
jsoumilas@consumerlawfirm.com
Lauren KW Brennan
lbrennan@consumerlawfirm.com
FRANCIS             MAILMAN
SOUMILAS PC
1600 Market St., Suite 2510
Philadelphia, PA 19103
T: 215-735-8600
F: 215-940-8000

G. Blake Andrews, Jr.
blake@blakeandrewslaw.com
BLAKE      ANDREWS      LAW
FIRM, LLC
1831 Timothy Dr.

Atlanta, GA 30329
T: 770-828-6225

Attorneys for Plaintiffs